The final case on our calendar this morning for oral argument is number 21-2201. Schneider versus Mahopac, I don't know how to say that. Mahopac. Mahopac. Mahopac Central School District. Mayo. Mayopac. Mayopac. Pardon me. All right, thank you. Thanks. Directed by my perceived colleagues. Long Island. Mr. Schneider. Good morning. Good morning. May I take this off? Yes, you may. Thank you. May it please the court, my name is Jonathan Schneider. I am pro se plaintiff appellant for Schneider versus Mahopac Central School Districts. This case was dismissed at the district level for a lack of jurisdiction, citing the Individuals with Disabilities Education Act. We argue that this case is not educational in any matter. We believe that the remedy for it to be educational must be addressed inside of the Individuals with Disabilities Education Act. However, under section 1415L of the IDEA provides that nothing in this chapter shall be construed to restrict or limit the rights, procedures, or remedies available under the Constitution, the ADA, Title V of the Rehabilitation Act, or other federal laws protecting the rights of children with disabilities. In contrast, under Title II of the ADA, all disabled individuals have protections that afford them the same access to public facilities and federally funded programs. The defendants took that equal protection away from our son when they removed the seizure training that was agreed upon to address the specific dangers presented by his disability. There is no remedy for the removal of this reasonable accommodation under the IDEA structure, and the Supreme Court goes further in the court syllabus of Fry v. Napoleon of 2017. To quote, we first hold that to meet the statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only relief the IDEA makes available. We next conclude that in determining whether a suit indeed seeks relief for such a denial, a court should look at the substance or gravamen of the plaintiff's complaint. Page 12 goes on to state that there might be a good reason, unrelated to a FAPE, for the school to make the requested accommodation. Indeed, another federal law like the ADA or Rehabilitation Act might require the accommodation on one of those alternative grounds. But still, the hearing officer cannot provide the requested relief. His role under the IDEA is to enforce the child's substantive right to a FAPE, and that is all. A school's conduct towards such a child, say, some refusal to make an accommodation, might injure them in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA. A complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to 1415L's exhaustion rule, because once again, the only relief the IDEA makes available is relief for the denial of a FAPE. Quoting page 15, by contrast, Title II of the ADA and Section 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside of schools. Those statutes aim to root out disability-based discrimination, enabling each covered person, and sometimes by means of reasonable accommodations, to participate equally to all others in public facilities and federally funded programs. In short, the IDEA guarantees individually tailored educational services. Title II and Section 504 promise non-discriminatory access to public institutions. Mr. Schneider? Yes, ma'am. Can I ask you a question? Yes, ma'am. This has obviously been a difficult interaction with the school district, and I understand your son is now in a different school. Is that right? Yes, your honor. Yeah. So, looking at your complaint, it seemed to me that you have alleged a direct violation of the IDEA, and that you were detailing your interactions with the school officials from September 19th through January 2020, and that you were seeking accommodation for his safety and educational needs. You wanted to have a one-on-one aide who's able to tend to his seizure medication and observations and so on. But it seemed to me that still the focus was on getting him educated in the public school, and that I couldn't understand really why a hearing officer couldn't have provided you that relief. That is correct, your honor. The heart of our complaint has not been in relation to the educational accommodations. The center of our complaint has always revolved around the action of December 6, 2019. So, your complaint actually doesn't really focus on just those two days. No, your honor. That was additional facts that were put in place in order to give a full history and context to our experience with the school. The complaint itself has always started directly after the event of December 6, 2019. That event was the removal of an agreed-upon reasonable accommodation to where an experienced individual would train new personnel working with our son, who had experience with his seizure disorder. That was agreed upon and removed by the school, specifically the school assistant superintendent, the day after the recommendations of our medical professionals were not taken. And shortly thereafter, we were informed that she would no longer be doing the training. That was part of the IEP, though, wasn't it? To have a one-on-one- But the training was not part of the IEP. The training was a side ad hoc agreement in relation to the school's historical inability to identify our son's seizures and to treat them medically when needed. Our son's seizures were increasing in duration at that time, and there was an additional rescue medicine that was needed to be administered. So the school had agreed that having someone experienced to cross-train new personnel would be a reasonable accommodation for the seizure disorder. It had nothing to do with education. Wasn't it still part of his IEP? I mean, that was the nature of your relationship with the school district. The IEP did not address anything in relation to the medical aspect. It addressed it in relation to the one-to-one aid. The training was not addressed in the IEP. The one-to-one aid was provided by the IEP, as were the additional services. We're not contesting anything for a one-to-one aid. We're not contesting anything for additional services. We contest the removal of seizure training and recognition, which are completely outside the realm of the IDEA. You're claiming that's a discreet act. I'm so sorry, Your Honor, I can't hear you. You're claiming that's a discreet act, removing the one-on-one aid and refusing to train a substitute. Correct. The issues that we have- Are you separately suing the Mahopac School District for the tuition that you're paying at the private school? We have retained counsel. We are beginning our independent hearing. I'm waiting for the Mahopac School District to update their bylaws. It presently references a superintendent as the point of contact for an independent hearing office. They retired 13 years ago, so I've been waiting for 11 days now to get an update on that. That is separate and completely aside from this. Completely separate, but you understand exhaustion under that lawsuit? Yes, and that lawsuit, we are at the two-year statute of limitations on the IEP of May 2020. So we are beginning that once we do get who the point of contact is for the independent hearing. And that's completely separate and aside from this. I have legal representation on that side. I understand. Do you know how to sue about the IEP if you have to? Yes, Your Honor. We are well aware of that. I had initially asked our education attorney if they had experience with school retaliation. They had said no. We subsequently interviewed multiple attorneys. And I believe the problem I had was interviewing attorneys who were educational attorneys as opposed to attorneys who were ADA attorneys. And I've been referenced to ADA attorneys, but they're employment ADA discrimination attorneys as opposed to public facilities ADA. So I have also had a pro se appointed counsel who was on the court directed mediation in the district court. They put their papers in in July of last year. And shortly thereafter, we received the decision in order. That again, the decision in order, the only thing I see lacking is specific to the events of December 6, 2019. And that has always been the beginning point of our complaint for retaliation. We don't see any connection to the IDA. We don't see any remedy that the IDA can offer us. We believe that it is a violation of Title II of the ADA. Let me interrupt for a second. What is the legal source of the school's obligation to provide a one on one aid? The one on one aid, I believe that the legal source for that would be the IDEA. That would be your IEP, right? With the IEP, yes. So, I mean, the test under the Supreme Court's case is whether your claim is generic in terms of whether the issue you have for your son could be presented in another public facility. A public facility doesn't have a responsibility to deal with, I mean, believe me, I'm not undermining. I'm just trying to understand, if you took your son to a park, a public park doesn't have to provide an aid so that your son can enjoy while he's at the park, does it? No, absolutely not, and that- And so I understand that you desire to separate this from his IEP. But the reason why you need a good aid who's able to identify the seizures and deal with the seizures. And I take it you were satisfied with the aid that you had at one point in time. Is that, and it's obviously a very significant problem for your son and his education. Is that his seizures and his ability to deal with his seizures is correlated to his ability to learn, right? One is the ability to learn and two is the life safety aspect. Without being able to identify a seizure and without being able to administer medication for a seizure, then prolonged exposures to the infantile spasm will result in additional brain damage and possible death. So, okay, so you say this is what makes your claim different because he has a distinct health aspect to it separate from the learning aspect. 100%, your honor. Okay, fair enough, thank you. Is it true that your son is not experiencing seizures in the private school that he now attends? No, my son does continue to experience seizures in the private school. There is a one-to-one paraprofessional who works with him as well. We have open means of communication. He's trained in rescue medicine protocol. He's in a much safer environment now for his health and his life. And we're very pleased with where he is presently. Thank you. All right, thank you. Thank you. You have one minute of rebuttal. Ms. Collins. Thank you, may it please the court. The issue before this court, your honors, is the extent to which the gravamen of the complaint in this matter alleges a claim that requires exhaustion under the IDEA. We posit, obviously, that the district court's lower decision was correct and that that decision should be affirmed because it found that the gravamen of Mr. Schneider's complaint does, in fact, allege, in essence, a denial of a FAPE. Which would require, obviously, IDEA exhaustion. Now, we have three general arguments in support of this position. The first of which your honor already touched upon is the fact that the complaint in this matter specifically alleges an IDEA claim. Which under the Frye versus Napoleon Community School test teaches us that that is an important factor to consider overall in determining what the essence of this complaint is all about. The second, of course, is the factual allegations themselves within the complaint. And, of course, your honor has touched upon several of these already. Those allegations include, obviously, the extent to which the one-on-one aid was provided or was adequate enough to provide the services under the IEP for his son. Mr. Schneider has gone to the CSE, the Committee for Special Education on Numerous Times, which is alleged in the complaint, to complain about the provision of care or the amount of shared versus non-shared. Well, wasn't the child entitled to one-on-one care without sharing? Wasn't that part of his FAPE? Yes, it was. It was, and the issue, I think, was initially the understanding of what shared versus non-shared or one-on-one meant. Do you think so? One-on-one, what does it mean? Does it mean one-on-two or one-on-one? It certainly means one-on-one, not one-on-two, your honor. So what do you mean there was confusion? Who was confused? The issue, what I understand in the original, or in the complaint, rather, the original aid had complained to the student's parents that she was being asked to also look at another child for a certain amount of time. But that's not one-on-one if she was looking after another child, too. That was the crux of the issue. Stowell is your client? First name I don't have right in front of me. Dr. Stowell is the superintendent? Actually, Dr. Stowell is the assistant superintendent for pupil personnel services. because he's alleged to have said, alleged by Mr. Schneider, that we don't care what your doctors say. We know education. I'm strongly doubting that you really know education. Regardless of what Dr. Stowell may have said, the issue and concern the implementation of how much of an aid's time was necessary for JS under his IEP. But is it the policy of the school to believe that we don't care what your doctors say? I'm not for certain what your honor is referring to. If it's an allegation in the complaint, that's an allegation in the complaint. Right, that's the allegation in the complaint. And we would deny that that would obviously have occurred. You would deny that he ever said it? We haven't gone through discovery, your honor. This was obviously a motion to dismiss. Right, you haven't had discovery, yes. So I'm not going to speculate into what may or may not have been said. If a child has a physical disability that does not impair their ability to learn, does the school district have an obligation under the Americans with Disability Act or other federal legislation to make reasonable accommodations with regard to that student's attendance at school? For example, dealing with stairs or other devices within the school? Yes, your honor, and the key phrase is, of course, reasonable accommodation. They would, of course, have that right. I think, in this case, the reasonable accommodation that Mr. Schneider was looking for perhaps was a little bit different than what the IEP provided. Well, that's why I asked, because Mr. Schneider makes a very kind of nuanced and distinct argument from the IEP, the Freedom of Appropriate Public Education argument. He's saying, this isn't really about my son's education and the interference of the seizures with his education. This is about his health, generally, and his survival. And so that's why I asked you, if a student had a life-threatening condition that did not affect their education, the school would have to make reasonable accommodations for that student's physical disability, wouldn't they? That's correct. Then why isn't his claim then, if he characterized it as such. I mean, the district court dismisses on failure to exhaust. Correct, which only applies to the IEP. And he's articulating a claim that's somewhat distinct and perhaps may satisfy Fry. He's talking about his son, not as to the seizures that interfere with his education, but the seizures that are potentially harmful to him or perhaps fatal to him. Why isn't his claim as characterized as such there? Shouldn't we send that back for that kind of consideration? Is there some kind of impediment to our consideration of that? Well, your honor, I think in response to that, there would be two points. Number one, Fry explicitly holds that a claim that can be brought under the ADA or section 54 or whatnot. If it can also be brought under the IDEA, then of course it needs IDEA exhaustion. Of course, that's why Fry sent the case back, because this was a service dog and it wasn't clear, Fry was. It wasn't clear to the Supreme Court as to whether the service dog was necessary for the child's education or just for the child's emotional well-being. And so it's sent it back for reconsideration after Fry set out the standards. But so I ask you now, I apologize for reflecting not knowing exactly the answer here. Did he plead an ADA violation in the district court? He did plead an ADA violation. So it's properly here and not waived in any way? That's correct, your honor. All right, because he's given up some of his other claims. The First Amendment claims, criminal conspiracy claims, some of his other things. So he stands here and he says to us, my son has this condition, it may affect his education. And I think he's conceded that he loses on the IDEA and he knows that. That's why he's pursuing a new IEP and probably going to litigate his eligibility for an outside school. But now he stands here and says, still, my son was at risk of being harmed, and the school didn't address that. And that's separate from his education. The school maintains it's all part of one thing, right? That's correct, and under Frye, your honor, it would also be the same. Because under Frye, even the way that Mr. Schneider has characterized his claim today in front of you all, which we should take into account may not be the same way that was alleged in the complaint, and that's what's on appeal here. Even though he still has an ADA aspect to his overall claim, because he also, as he acknowledges I think here this morning, that he also has an educational component to that claim. Under Frye, you have to exhaust under the IDEA. Yes, your honor. Should we afford any latitude by virtue of the observation that he's been proceeding pro se? And even though IEP language and IDEA language suffuses the complaint, that as he's developed it over time and in his briefing, and still with kind of fair notice to the school district, he's relying on a safety rationale, an ADA kind of rationale more now. No, your honor, and I think with all due respect, Mr. Schneider has been a very zealous, proficient advocate, very considerate, and very respectful, and I appreciate that for his camaraderie in all of these proceedings. I think it goes the other way as well, because the school district has also provided adequate notice to Mr. Schneider that the IDEA and the exhaustion argument is a problem in his lawsuit, and rather than withdraw and try to administratively exhaust in that matter, he's pursued this case, and that's why we're here. So could a hearing officer charged with the proceeding under the IDEA have provided the relief that he requested here? It is possible, your honor, because I would posit that one of Mr. Schneider's main complaints is that the IEP that his son had did not do enough. It was inadequate in the sense that it did not provide, I guess what he's arguing now on appeal, is for the training or this sort of trained or certain kind of aid or XYZ in addition to what the IEP already provides as ABC. And in that context, it is possible, of course, that the hearing officer would be able to find the IEP inadequate or in some way and refer it to the CSE to reconvene and issue a new IEP or revised EEP. That would provide certain things. And the hearing officer would be able to address a retaliation claim? Not specifically a retaliation claim. But again, the underlying gravamen of the complaint is the idea that these services were either inadequate or not provided. And so even though a retaliation claim is separate and apart from what the provisions of the IDEA provide, we have to look at what the overall complaint in this matter is under the IDEA. Okay, thank you very much for your argument. Mr. Schneider, you have reserved one minute of rebuttal. Thank you, Your Honor. Going back to the Friday Napoleon, quoting a school's conduct towards such a child, say some refusal to make an accommodation might injure them in ways unrelated to a FAPE, which are addressed in statutes other than the IDA, a complaint seeking redress from those other harms, independent of any FAPE denial, is not subject to the 1415L's exhaustive rule. Because once again, the only relief that the IDA makes available is relief for the denial of the FAPE. Since the onset, we've said that the- Mr. Schneider. Yes, Your Honor. We're the only circuit in the United States that continues to allow pro se's to argue. And I have to say, you make me glad that we have the rule today, because you've done a very nice job. Thank you, Your Honor. And I know this is probably very emotional for you. But let me ask you, can you understand that it's hard for me to segregate the two, because when your son is having a seizure, it's both life threatening and education interrupting, isn't it? Yes, Your Honor. And so, and I realize that there are probably some seizures that are dealt with quickly and go on. And there are others that may be mastered. There must be some kind of difficulty with diagnosing or appreciating the seriousness of what's going on. Or even that something is going on, maybe. And that seems to be where your problem, where your dispute lies. But doesn't every seizure then interfere with his education while he's in school? Every seizure interferes with the education, but this is not considering the education. This again was an agreed upon reasonable accommodation for medical purposes that was in place and was unilaterally dissolved and terminated by Defendant Stoll the day after he was challenged by the medical professionals from the neurological team for the disabled student. What do you point to, to show that it was an accommodation of the ADA for medical purposes and not part of the IEP? I thought it was part of the educational program arrangements that were made by the CSE. The training that was specifically regimented for this turnover was in relation to identifying seizures, to alerting the medical personnel, and to having medical intervention. There was nothing that correlated with an educational accommodation or modification in relation to this training. Completely separate from the responsibilities. Was the one on one training part of the IEP? No, the one on one training was not part of the IEP. It was the one on one aid part of the IEP. Yes, the one on one aid was part of the IEP. All right, thank you very much. Thank you for your arguments. We'll resume decision. This concludes our arguments this morning. Clerk will please adjourn court. Clerk will now adjourn.